UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

EVEREST REINSURANCE COMPANY,

Plaintiff

vs.

BRADLEY COX ;
COX OIL LLC;
COX INVESTMENT PARTNERS, LP,

Defendants.

Civil Action No. <u>24-cv-756</u>

### FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, Everest Reinsurance Company ("Everest"), by and through its undersigned counsel, The Hustead Law Firm, *A Professional Corporation*, submits its First Amended Complaint against Defendants, Bradley Cox ("B. Cox"), Cox Oil LLC ("Cox Oil") and Cox Investment Partners, LP ("Cox Investments") (collectively "Defendants").

### I.   PARTIES

1. Everest is a Delaware corporation, with its principal place of business in New Jersey and authorized to conduct business in Texas.

2. Upon information and belief, B. Cox is a resident of Texas with an address of 5619 Walnut Hill Lane, Dallas, Texas 75229.

3. Upon information and belief, Cox Oil is a Delaware limited liability corporation, with its principal offices located at 4514 Cole Ave., Suite 1175, Dallas, Texas 75205.

4. Upon information and belief, Cox Investments is a Delaware limited partnership corporation, with its principal offices located at 4514 Cole Ave., Suite 1175, Dallas, Texas 75205.

1

## II.     JURISDICTION/VENUE

5. Everest hereby incorporates by reference all the allegations contained above as though set forth herein.

6. This Court has personal jurisdiction over Defendants because they reside and transacted business in Texas, including, but not limited to, operating oil wells, and entering into contracts with Everest in which Defendants promised to indemnify and post collateral with Everest as set forth in the contracts and to reimburse Everest for, among other things, any losses, expenses, payments, attorneys' fees, costs incurred by Everest in the event Everest incurs losses as a result of issuing surety bonds on behalf of Defendants. As such, this court has personal jurisdiction over Defendants.

7. This Court has original subject matter jurisdiction over Everest's claims pursuant to 28 U.S.C. § 1332 (diversity) because the amount of Everest's claims against Defendants exceeds $75,000 (Everest seeks collateral in the amount of no less than $38,907,000.00 and reimbursement of all loses) and Everest is a citizen of a different state than each of Defendants.

8. As set forth above, Everest is a citizen of Delaware, where Everest is incorporated, and New Jersey where its principal place of business is located.

9. Upon information and belief after a diligent search of publicly available information, B. Cox is domiciled in Texas and therefore a citizen of Texas.

10. Cox Oil is a Delaware limited liability company with a principal place of business in Texas. The sole member of Cox Oil is the Edwin L. Cox B Trust FBO BEC, a trust formed in Texas. For purposes of diversity jurisdiction, Cox Oil, LLC is considered a resident of Texas because all of its members are citizens of Texas.

11. Cox Investments, as a limited partnership, is a citizen of the state of its members.

12. Upon information and belief after a diligent search of publicly available information, Cox Investments is a Delaware partnership, at all times alleged herein, conducted business in the State of Texas with its principal place of business located at 4514 Cole Ave., Suite 1175, Dallas, Texas 75205.

13. Upon information and belief after a diligent search of publicly available information, the sole general partner of Cox Investments is B. Cox who is a resident of Texas as listed above. For purposes of diversity jurisdiction, Cox Investments is considered a resident of Texas because all of its partners are citizens of Texas.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Everest's claim occurred in or around Dallas, Texas.

15. The Indemnity Agreement includes a choice of law and venue provision of New York. Everest hereby waives its right to pursue the litigation in the venue of New York.

### III.   GENERAL ALLEGATIONS

**A.   The Bonds**

16. Everest, as Surety, issued payment and performance bonds (the "Bonds") on behalf of MLCJR, LLC, Energy XXI GOM, LLC, Energy XXI GOM, LLC, EPL Oil & Gas, LLC, EPL Oil & Gas, LLC, Energy XXI GOM, LLC, Energy XXI GOM, LLC, Energy XXI GOM, LLC, (the "Principals") attached as **Exhibit 1,** and incorporated herein by reference.

17. Pursuant to the terms of the Bonds and prevailing law, Everest has guaranteed that if the Principals fail to take certain actions, the underlying bonded obligation will become due, demands for collateral will be made, and Everest will pay the debt(s). In all, Everest issued Bonds totaling at least $44,407,000.00.

**B.     The Indemnity Agreement**

18.     As consideration for Everest issuing the Bonds, and for other consideration, on or around December 6, 2018, MLCJR, LLC, Cox Oil Offshore, LLC, and Cox Operating LLC (collectively, the "Initial Indemnitors") executed an Agreement of Indemnity attached as **Exhibit 2,** and incorporated by reference.

19.     On or around January 5, 2021, the Defendants executed the First Amendment to the Agreement of Indemnity (the "(Indemnity Agreement") supplementing the Agreement of Indemnity executed on December 6, 2018. A copy of the Indemnity Agreement is attached hereto and incorporated by reference as **Exhibit 3**.

20.     Pursuant to the Indemnity Agreement, the Initial Indemnitors and the Defendants agreed:

2.  Indemnity. Indemnitors shall indemnify the Surety and save it harmless from and against any and all liabilities, claims, demands, payments, losses, damages, expenses, and costs to investigate and/or resolve claims which Surety may at any time incur or pay by reason of or arising out of its execution or non-execution of any Bonds. Indemnitors shall place the Surety in funds to meet all of its liability under any Bond, promptly upon written request and before the Surety may be required to make any payment thereunder. The duty to indemnify and hold harmless also includes, without limitation, payment of Surety's losses, attorney's fees and expenses, and consultant's fees and disbursements incurred and/or paid with respect to any Bond: a) to investigate and/or resolve claims against the Bonds; b) in any action or proceeding between Indemnitors and Surety; and or c) in any action or proceeding between Surety and any third party. The duty to indemnify and hold harmless exists whether or not the claim is made against Surety as a joint and or several obligor and whether or not Indemnitors or any of them is then liable to or demanded to make a payment. A copy of the claim, demand, voucher, invoice, and/or other evidence of the potential liability of and/or payment by the Surety shall be prima facie evidence of the fact and amount of Indemnitors' liability to Surety under this Agreement.

3.  Additional Indemnity Terms. The Indemnitors shall remain bound under the terms of this Agreement even if Surety, with or without notice to or knowledge of Indemnitors, may have accepted or released other agreements of indemnity or collateral from one or more Indemnitors or others. The rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to any and all other rights, powers and remedies which Surety may have or acquire against Indemnitors or others by operation of law or otherwise. Unless expressly stated to the contrary, this Agreement is not intended to and shall not be deemed to supersede any other indemnity agreement between one or more Indemnitors and Surety. Upon Surety's written demand, Indemnitors shall promptly deposit with Surety a clean, irrevocable letter of credit ("ILOC") on a form and from a bank acceptable to Surety, or shall provide another form of collateral acceptable to Surety (individually and collectively, the "Collateral") in the amount of any reserve Surety establishes for any existing liability or claim, and or any expenses associated therewith, whether or not any assertion or payment of such liability, claim, or expense has been made at the time of the Surety's demand. Further, Indemnitors expressly and specifically agree that Surety in its sole discretion and for any reason may by written demand require Indemnitors to secure within thirty (30) days the full and complete discharge of any and all Bonds ("Discharge Demand"). Within thirty-seven (37) days of Surety's Discharge Demand, Indemnitors shall provide to Surety Collateral as defined herein in the amount representing the total of any undischarged liability under the Bonds as determined by the Surety in its sole discretion. In the event of any increases in Surety's undischarged liability, Indemnitors shall supplement the Collateral to match the increase.

Surety shall have no obligation to release any Collateral provided to Surety, or remit to Indemnitors any interest or proceeds therefrom until Surety has received written releases or other documentation in form and substance satisfactory to Surety with respect to the discharge of Surety's obligations on all Bonds. Surety may apply the Collateral to any premium due, loss, cost and/or expense provided for in this Agreement. To the fullest extent allowed by law, Indemnitors waive any and all defenses or challenges to the provision of collateral pursuant to this Agreement. Indemnitors further expressly stipulate and agree that Surety will have no adequate remedy at law should Indemnitors fail to post any collateral required herein, and agree that Surety is entitled to specific performance of the obligation to post collateral.

21.     Pursuant to the Indemnity Agreement, the Initial Indemnitors and the Defendants agreed:

4

> 12. **Security Interest:** As security for their obligations hereunder, Indemnitors hereby grant to Company a Security interest in the following properties, assets and rights of Indemnitors, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof: all goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter-of-credit rights, securities and all other investment property supporting obligations, any Contract or contract rights or frights to the payment of money, insurance claims and proceeds, and all general intangibles (the "Collateral"). This Agreement shall for all purposes constitute a Security Agreement for the benefit of Company in accordance with the Uniform Commercial Code ("UCC") and all similar statutes. Indemnitors hereby irrevocably authorize Company, without notice to any Indemnitor, in order to perfect the security interest granted herein, to file either: (a) this Agreement or a copy or other reproduction of this Agreement; or )b) any initial financing statements or amendments thereto that indicate the Collateral as all assets of Indemnitors or words of similar effect, as being of any equal or lesser scope or with greater detail and that contain any other information relating to any Indemnitor required by Part 5 of Article 9 of the UCC for the jurisdiction where such financing statement or amendment is filed. Company may add schedules or other documents to this Agreement as necessary to perfect its rights. The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement.

22. Pursuant to the Indemnity Agreement, the Initial Indemnitors and the Defendants agreed:

> 1. **Payment and Cooperation.** Indemnitors shall pay or cause to be paid to Surety promptly when due all agreed premium amounts. Indemnitors shall cooperate with Surety and provide Surety copies of requested documents as well as access to Indemnitors' books, records, personnel, and properties to allow Surety to: a) analyze, assess, and/or underwrite proposed bonds; b) investigate any claims against any Bonds; and/or to c) investigate at any time and as often as Surety deems appropriate, the Indemnitors' compliance with and/or status of performance of Indemnitors' obligations under this Agreement and the Bonds.

23. By virtue of the definitions and representations in the Indemnity Agreement, the Defendants are, *inter alia*, obligated to post collateral with Everest, cooperate with Everest's investigation into any claims, and are liable to Everest as set forth herein.

**C.    Bankruptcy**

24. On May 14, 2023, the Initial Indemnitors and others filed Chapter 11 Bankruptcy in the U.S. Bankruptcy Court for the Southern District of Texas, cause no. 23-90324.

25. Given that Everest issued bonds with the Initial Indemnitors as the Principal and primary obligors for debts arising under the Bonds, Everest has serious concerns about the Initial Indemnitors' and Defendants' abilities and intentions to discharge their obligations under the Indemnity Agreement.

**D.    Everest's Collateral Demands**

26. On May 24, 2023, Everest demanded that Defendants place Everest in funds for losses incurred or will be occurred in the future. A copy of this correspondence is attached hereto as **Exhibit 4** and incorporated by reference.

27. At that time, Everest demanded the Defendants post collateral in the amount of $38,907,000.00, which represents the bonded exposure of Everest. Everest expects to incur losses and such losses will be ongoing.

28. Everest also demanded that Defendants submit to a books and records review as required by the Indemnity Agreement.

29. On February 22, 2024, Everest reiterated its demands to Defendants. A copy of this correspondence is attached hereto as **Exhibit 5** and incorporated by reference.

30. The Defendants have not posted collateral Everest.

31. The Defendants refused to produce their books and records.

32. Everest is incurring attorneys' fees, costs, and expenses, and expects to continue incurring attorneys' fees, costs, and expenses on a near daily basis until this matter is resolved.

33. Everest has incurred substantial losses under its Bonds, for which the Defendants are liable.

34. All conditions precedent to bringing and maintaining this action have been met or have occurred.

## FIRST CLAIM FOR RELIEF
### (Breach of Express Contract)

35. Everest hereby incorporates by reference all the allegations contained above as though fully set forth herein.

36. The Defendants entered into a valid and enforceable contract, the Indemnity Agreement, with Everest.

37. Sufficient consideration supports the Indemnity Agreement.

38. Everest substantially performed its obligations, if any, under the Indemnity Agreement.

39. The Indemnitors failed to meet their obligations under the Indemnity Agreement, which constitutes a material breach.

40. The Defendants' breach of the Indemnity Agreement has damaged Everest, and the Defendants are liable to Everest for all losses and expenses incurred by Everest as a result of the issuance of the Bonds, including, but not limited to, bond payments, attorneys' fees, consultant fees, expenses, and costs, all as provided by the terms of the Indemnity Agreement.

## SECOND CLAIM FOR RELIEF
### (Injunctive Relief – Specific Performance)

41. Everest hereby incorporates by reference the allegations contained above as though fully set forth herein.

42. Pursuant to the Indemnity Agreement, the Defendants, as indemnitors, are required to place Everest in sufficient funds to cover any and all losses or expenses, including attorneys' and consultant's fees and costs, incurred or to be incurred by Everest as a result of the issuance of the Bonds.

43. There is no adequate remedy at law for Everest to recover the benefit of the Indemnity Agreement.

44. Everest has performed any obligations owed to the Defendants under the Indemnity Agreement and/or Bonds.

45. Everest requests specific performance on the provisions of the Indemnity Agreement, which require the Defendants to grant access to books and records and/or to place Everest in sufficient funds to cover any possible liability or loss for which the Defendants are or will be obligated to indemnify Everest under the terms of the Indemnity Agreement.

46. If the Defendants do not or cannot place Everest in sufficient funds, Everest requests an equitable lien in the amount of no less than $38,907,000.00 plus attorneys' fees ("Lien Amount") on any real property owned by the Defendants.

47. If the Defendants do not or cannot place Everest in sufficient funds, Everest should also be given a valid equitable security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of the Defendants in and to all items, property, documents, etc., owned by the Defendants.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment – Equitable Liens)

48. Everest hereby incorporates by reference the allegations contained above, as though fully set forth herein.

49. Everest conferred a benefit on the Defendants by extending surety credit and/or issuing the Bonds on behalf of the Defendants.

50. The Defendants accepted and appreciated that benefit by profiting from their operations, which would not have been possible without the issuance of Everest's surety credit and/or the Bonds.

51. The Defendants further accepted and appreciated that benefit by virtue of the equity in their real and personal property as a direct result of these profits, which equity would not have been possible without the issuance of Everest's surety credit and/or the Bonds.

52. The Defendants agreed to defend, indemnify, and post collateral with Everest in exchange for and pursuant to the terms of the Indemnity Agreement.

53. By failing and refusing to do so, the Defendants have been and will continue to be unjustly enriched by keeping funds or other collateral to which Everest is entitled pursuant to the Indemnity Agreement and/or common law.

54. It would be inequitable for the Defendants to retain the benefit of Everest's surety credit and/or the Bonds without complying with their concomitant obligations under the GIA and/or common law to post collateral as promised to protect Everest from losses.

55. Under these circumstances and given the surety relationship between Everest and the Defendants, general considerations of right and justice dictate that Everest be granted the right to have the Defendants' assets applied to their obligation to post collateral with Everest.

## IV.   CONCLUSION

WHEREFORE, for the foregoing reasons, Everest requests judgment against the Defendants as follows and for such further relief as the Court deems proper:

- For all losses, expenses, costs and attorneys' fees, plus pre- and post-judgment interest at the maximum rate allowed by law, incurred by Everest as a result of the Defendants' breach of the Indemnity Agreement, as well as specific performance of the same;

- For the Defendants to indemnify and hold Everest harmless from and against any and all liabilities, losses and expenses of any kind of nature, including, but not limited to, interest, court costs, expenses and attorneys' fees, imposed upon, sustained or incurred by Everest on account of the issuance of the Bonds;

- Due to the Defendants' failure or inability to place Everest in sufficient funds, Everest requests an equitable lien in the Lien Amount (including attorneys' fees, costs, and expenses) to be placed on any real property owned in whole or in part by the Defendants;

- Everest requests a valid security interest, as collateral security in the Lien Amount, on any and all rights, title and interest of the Defendants in and to all items, property, documents, etc. owned by the Defendants;

- For preliminary and permanent injunctive relief requiring the Indemnitors to grant access to books and records and to place Everest in funds by money, property, liens or security interests in real or personal property, as determined by Everest, and restraining the Defendants' from transferring, disposing or otherwise liquidating any property, real or personal, beyond reasonable operating expenses, during the pendency of this matter; and

- For such further relief as the Court deems just and proper.

Respectfully submitted this 30th day of May, 2024.

THE HUSTEAD LAW FIRM
*A Professional Corporation*

*The Original Signature is on File at
The Hustead Law Firm, A Professional
Corporation*

*s/ Michael P. Hupf*
Michael P. Hupf, Esq.
The Hustead Law Firm, *A Professional Corporation*
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
(303) 721-5000
mph@thlf.com
*Counsel for Plaintiff Everest Reinsurance Company*

10