UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EVEREST REINSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-0756-X |
| | § | |
| BRADLEY COX, COX OIL LLC, and COX INVESTMENT PARTNERS LP, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Everest Reinsurance Company's (Everest) motion for summary judgment. (Doc. 141). After reviewing the motion, the briefing,[1] and the applicable law, the Court **GRANTS** the motion as to Everest's breach of contract claim and **ORDERS** specific performance from Defendant Bradley Cox (Cox). The Court furthers **ORDERS** Everest to file a motion for default within 30 days of this Order because Cox Oil LLC and Cox Investment Partners LP failed to appear.

## I. Background

This is a breach of contract case. Everest, as surety, entered into an indemnity agreement (Indemnity Agreement) with several energy companies that Cox's trust wholly owns and issued performance bonds pursuant to the Indemnity Agreement.

[1] Under Northern District of Texas Local Rule 56.4(a) and (c), the Court did not consider the portion of Cox's response that contained arguments and authorities. *See* Doc. 184 at 5–16. Cox and his attorney, Jack Jamison, have repeatedly failed to follow the Court's local and judge-specific rules and repeatedly delayed this case. *See, e.g.*, Docs. 47, 87, 93, 123, 127, 138, 156, 169, 196. The Court does not have time to continuously strike non-compliant motions, and repeated refiling for failure to follow simple rules burdens the Court and the opposing parties with unnecessary costs.

Everest later sought to amend the terms of the Indemnity Agreement to add Defendants Cox, Cox Oil LLC, and Cox Investment Partners LP (collectively, the "Cox Parties") as indemnitors with personal liability.

The Cox Parties all signed an amended agreement (Amended Agreement). Cox himself signed a page of the Amended Agreement after receiving it via email from the Cox trust-owned energy companies' CEO. The Amended Agreement requires the Cox Parties to personally post collateral and reimburse Everest for losses when Everest makes a valid request.

In May 2023, the Cox trust-owned energy companies filed for bankruptcy, so Everest demanded that the Cox Parties post collateral pursuant to the Amended Agreement. The Cox Parties have not posted collateral or otherwise complied with Everest's requests to date, despite repeated follow-ups from Everest. Accordingly, Everest sued the Cox Parties for breach of contract, specific performance, and unjust enrichment: equitable liens. Only Cox has appeared in and responded to this lawsuit.

## II. Legal Standard

District courts can grant summary judgment only if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] A dispute "is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."[3] If the movant presents a properly supported motion, "the burden shifts to the nonmoving party to show that summary

---

[2] FED. R. CIV. P. 56(a).

[3] *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (cleaned up).

judgment is inappropriate."[4] "[M]ere allegations or denials" will not suffice; nor will "unsubstantiated or conclusory assertions that a fact [dispute] exists."[5] The nonmovant must present "evidence sufficient to support a jury verdict."[6]

## III. Analysis

Everest brings three claims: (1) breach of contract; (2) specific performance; and (3) unjust enrichment: equitable liens.[7] The Court concludes that because there is no genuine dispute of material fact as to whether Cox breached his contract with Everest, specific performance is warranted.[8]

### A. Breach of Contract

The parties dispute whether Cox executed the Amended Agreement.[9] New York law governs the Amended Agreement.[10] Because Cox signed the Amended Agreement, the Court finds as a matter of law that the Amended Agreement binds Cox.

---

[4] *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[5] *Id.*

[6] *Id.*

[7] At Everest's request, the Court does not reach Everest's unjust enrichment claim. *See* Doc. 201 at 1 n.1 ("Should the Court grant Everest specific performance against [Cox] and grant it judgment for its total loss, Everest requests that the Court dismiss all remaining claims it has asserted against [Cox] once judgment enters, such that a final, appealable, and enforceable judgment is in place.").

[8] The Court **OVERRULES** the objection to the evidence Cox presented. *See* Doc. 184 at 3. *See Chevron Oronite Co. v. Jacobs Field Serv. N. Am., Inc.*, 951 F.3d 219, 227 n.8 (5th Cir. 2020) (quoting FED. R. CIV. P. 56(c)(2)) ("On summary judgment, evidence, to be considered, need not be offered in a form admissible at trial; it need only be *capable* of being 'presented in a form that would be admissible in evidence.'"). Everest's evidence meets this standard.

[9] *See* Doc. 197 at 4.

[10] New York law governs this case because the initial written contract has a choice of law clause for New York. *See* Doc. 17-2 ¶ 11 (choice of law provision in initial agreement); Doc. 17-3 at 1 (reaffirming terms of initial agreement for amended agreement). So while Cox argues that Texas law applies, his crude argument fails because the amended agreement Cox signed included an enforceable choice of law provision. *See Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015).

Suretyship contracts are governed by the same rules as normal contracts in New York.[11] Under New York law, a party attempting to recover on a claim for breach of contract must prove the following elements: "1) a contract exists; 2) the plaintiff performed in accordance with the contract; 3) the defendant breached its contractual obligations; and 4) the defendant's breach resulted in damages."[12] No genuine dispute of material fact exists as to any of these elements.

First, a contract exists between Cox and Everest as a matter of law. Parties may agree to incorporate separate documents by reference as a binding part of an agreement.[13] A party's signature indicates his assent.[14] New York law requires clear and convincing evidence to rebut the acknowledgement of a notary public.[15]

Here, the Amended Agreement subjects Cox to personal liability because Cox signed it, and the Amended Agreement incorporated the Indemnity Agreement by reference.[16] Cox argues that he did not assent to the Amended Agreement because, among other reasons, he never read it before signing it, and Everest never communicated directly with him about the Amended Agreement.[17] But the Cox trust-owned energy companies' CEO both emailed Cox about the Amended Agreement and

---

[11] *See Tornatore v. Cohen*, 128 N.Y.S.3d 107, 109 (App. Div. 2020).

[12] *34–06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022) (cleaned up).

[13] *See Chiacchia v. Nat'l Westminster Bank*, 124 A.D.2d 626, 628 (N.Y. App. Div. 1986).

[14] *See John Deere Ins. Co. v. GBE/Alasia Corp.*, 57 A.D.3d 620, 621 (N.Y. App. Div. 2008).

[15] *See Beshara v. Beshara*, 51 A.D.3d 837, 838 (N.Y. App. Div. 2008).

[16] Cox instead argues that the agreement is invalid because a notary did not witness his actual signature. *See* Doc. 197 at 31 n.73, 34. But a party cannot disaffirm a contract he signed simply because he chose not to sign it in front of his notary. *See John Deere*, 57 A.D.3d at 621.

[17] *See* Doc. 201 at 6 (attempting to summarize Cox's many response arguments).

talked with Everest on Cox's behalf.[18] So neither excuse works, and the Amended Agreement is valid as a matter of law.[19]

Second, Everest performed its obligations under the Amended Agreement because it issued the required performance bonds and investigated and handled corresponding claims. "A performance bond is an undertaking by the surety to be financially responsible to the owner if the surety's principal (i.e., the contractor) does not faithfully perform all of its obligations under the contract."[20] The Amended Agreement required Everest to issue certain bonds, and Everest issued those bonds.[21] So Everest performed.

Third, Cox breached his contractual obligations by failing to collateralize Everest upon Everest's request. Cox's brief pumps out argument after argument as to why he should avoid liability,[22] but no argument strikes pay dirt. The undisputed, material facts are simple: Cox agreed to indemnify Everest "promptly upon written request and before [Everest] may be required to make any payment" from claims,

---

[18] *See* Doc. 197 at 2–3.

[19] *See Humble Oil & Ref. Co. v. Jaybert Esso Serv. Station, Inc.*, 294 N.Y.S.2d 190, 192 (App. Div. 1968).

[20] *WBP Cent. Assocs., LLC v. DeCola*, 937 N.Y.S.2d 306, 309 (App. Div. 2012).

[21] *See* Docs. 17-2, 17-3.

[22] Cox argues that he is not liable at least because (1) he did not know what he was signing; (2) Everest has not paid any bond claim to any oblige; (3) he never spoke with anyone from Everest directly; (4) someone with apparent authority made minor, post-execution changes to the amendment after he signed; and (5) Everest's request for written collateral was insufficient. *See* Doc. 201 at 6 (attempting to summarize Cox's arguments). But his first four excuses are immaterial as a matter of law, and his last excuse does not constitute a genuine dispute of material fact. *See* Doc. 197 at 7 n.23 (calling the written request for collateral defective because Everest did not represent that any claim had been made on a bond). But the plain text of the incorporated Initial Agreement allowed Everest to issue a request for collateral prior to receiving a claim. *See* Doc. 17-2 ¶ 2; Doc. 17-3; Doc. 201 at 14.

demands, and costs.[23] After the Cox trust-owned energy companies' bankruptcies, Everest made a written indemnification request to Cox, anticipating a potential loss.[24] But Cox refused to post collateral.[25] So Cox breached the contract.

Fourth, Everest suffered damages due to Cox's breach. As a surety, Everest had to pay the surety owner if the Cox trust-owned energy companies did not fulfill their contractual obligations.[26] Everest provided evidence that it has suffered $375,382 in losses, that future losses are likely, and that it upped its reserves to $27,800,000 in anticipation of those future losses.[27] Cox provided no contrary evidence (besides generally objecting to Everest's affidavits).[28] So Everest suffered damages because of Cox's breach.

Because no dispute of material fact exists for any breach of contract element, the Court **GRANTS** Everest's motion for summary judgment as to breach of contract.

### B. Specific Performance

Specific performance is warranted because Everest proved: (1) it substantially performed its contractual obligations, (2) it is willing and able to perform its remaining obligations, (3) Cox can perform, and (4) no adequate remedy at law exists.[29] First, Everest substantially performed its contractual obligations by issuing

---

[23] Doc. 17-2 ¶ 2; Doc. 17-3.

[24] *See* Doc. 143-6.

[25] *See* Doc. 201 at 16.

[26] *See DeCola*, 937 N.Y.S.2d at 309.

[27] *See* Doc. 201 at 14, 22; Doc. 143-2 ¶¶ 18–23.

[28] *See* Doc. 197 at 22. The Court did not consider Anthony Manganiello's affidavit because of Magistrate Judge Horan's order regarding initial disclosures. *See* Doc. 157 at 19–20.

[29] *See Herzog v. Belizario*, 52 Misc. 3d 583, 602 (N.Y. Sup. Ct. 2016).

the bond and receiving claims, as discussed above.[30] Second, Everest prepared to perform its remaining obligations by increasing its reserves.[31] Third, Everest showed that Cox can perform his obligations by providing evidence that Cox has over $100 million in property assets alone.[32] And fourth, Everest showed that no adequate remedy exists for the failure to give security as a matter of law.[33] So Everest is entitled to specific performance. Accordingly, the Court **GRANTS** Everest's motion for summary judgment as to specific performance.

## IV. Conclusion

Cox's well of arguments has run dry. Accordingly, the Court **GRANTS** Everest's motion for summary judgment and **ORDERS** specific performance from Defendant Bradley Cox under the terms of the Amended Agreement. Specifically, the Court **ORDERS** Cox to pay Everest $375,382, plus pre- and post-judgment interest, on Everest's claims for relief and also **ORDERS** Cox to post collateral equivalent to Everest's reserves in the amount of $27,800,000. The Order on collateral is enforceable by contempt. The Court further **ORDERS** Everest to either (1) file a motion for default within 30 days of this Order because Cox Oil LLC and Cox Investment Partners LP failed to appear in this case or (2) dismiss Cox Oil LLC and Cox Investment Partners LP to make the judgment final.

---

[30] *See* Doc. 142 at 25; Doc. 143-2.

[31] *See* Doc. 142 at 25; Doc. 143-2 ¶¶ 18–23.

[32] *See* Doc. 142 at 25 (citing Doc. 74-1).

[33] *See* Doc. 142 at 23–24; *see also BIB Const. Co. v. Fireman's Ins. Co. of* Newark, 214 A.D.2d 521, 523 (N.Y. App. Div. 1995) (concluding as a matter of law that "the damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate.").

**IT IS SO ORDERED** this 17th day of September, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE